First case up is United States v. Ness. It is Docket 23-7051. Mr. Pincus, when you're ready. May it please the court. My name is Howard Pincus from the Federal Public Defender and I represent Justin Ness. Mr. Ness's jury sent a note showing it was having difficulties with the reach of the on or about language for the charged offense. The district court did nothing to address the jury's confusion. This was plainly erroneous under Bolenbach v. United States and this court should grant Mr. Ness a new trial. Mr. Ness was accused of possessing a Cremor rifle and ammunition as a felon on or about September 8th of 2021. The evidence was disputed as to whether he possessed the items on that date, but there was no dispute that he possessed the Cremor rifle and the ammunition in it in December 2020 or earlier. A video posted to Facebook in that month showed him firing the gun. Do we know it's the same gun? In other words, in the indictment, there's a serial number. In the indictment, there is a serial number, but there was evidence of trial that this was his friend's gun and his friend is the one who said he put the rifle that was charged in the indictment in Mr. Ness's trailer, so I think it does close the circle and show that it is the same Cremor rifle. It could be two Cremor rifles, so it's a possibility. Well, the testimony was that he was firing that Cremor rifle, his friend's Cremor rifle, so there really doesn't seem to have been a dispute about that at trial, and in fact, the government argued that there was actual possession of that rifle by pointing to, and the only proof of actual possession of a rifle was the video posted to Facebook, so it really is clear in the record that we are talking about the same rifle. The theory at trial was my friend brought the gun over to my house and the ammo, dropped it off, left it there because he was going to California, didn't want to take it and leave it there, right? Correct. Also in evidence was the fact that the magazine, the ammo, the gun case, and the gun were all located in different places. Different places than where Mr. Irwin said he had left them. Right.  Okay, so that would give the jury the opportunity to look at this and disagree with the theory that he didn't possess it at the time, that his friend had just gratuitously left it there and he didn't know it was there, or that he had not been there at the time. The jury could have found that sometime after Mr. Irwin, who testified that he left the items there, it wasn't just Mr. Ness's word, that Mr. Ness had been in the trailer, that he knew that the guns and ammo were there, and they'd exercised control over it. Certainly could have found that.  But Mr. Ness and Mr. Irwin agreed on the big picture, which was that Mr. Irwin left the items there, and the evidence wasn't so strong that the jury had to believe what Mr. Irwin said and not what Mr. Ness said. And in fact, the note shows that that wasn't the jury's view. So if this had been the slam dunk that the prosecution said it was, the jury would have had no reason to ask for a timeline of the charged offense. It would have just looked to September 8, 2021, when the search was done. That would have been enough if it were really a slam dunk. Was there an instruction that the district court tendered as to as or near? There was the Stockton Circuit instruction on or about, and that says that the date has to be reasonably near the charged date. What the jury was asking for was to give content to an amorphous phrase, reasonably near. If it was looking to anything other than September 8, the only evidence on which it could have based a finding of possession was the video showing and the undisputed evidence about firing that Creedmoor rifle with ammunition in it, obviously, in December of 2020 or earlier. It was posted to Facebook in December 2020, so we know that was the latest, but it could have been even earlier. In any event, that's at least eight and a half months before the charged date. Do any of our cases undermine that instruction's efficacy? In other words, do any of our cases suggest that that stock instruction is insufficient to instruct the jury on what they need to know to decide whether something's reasonably near? I don't know that any actually undermine and say that that instruction is not sufficient. What this court has said and very clearly said is that on or about means satisfied by proof within a few weeks of the charged date, and that under special circumstances, it could go back further. There's no real dispute here about that principle of law. The dispute here seems to turn on whether the note triggered the duty to instruct the jury further. We're not saying that on or about this court's pattern instruction on or about is defective, but in the context of this case, the jury was confused and wanted more guidance. And that is what the court has to do. It has to address the jury's confusion and, in the words of Bolenback, cleared away with concrete accuracy. So as I look at it, we have two problems here. One of them is normally what would happen is defense counsel would say, judge, I think it needs to be cleared up. Let me propose something for you to send back to them. That would be a reasonable course of action, but that didn't happen. Did not happen. And so then we have to— That's why we're here on a plain error case. Right. So then we have to decide whether it's plain error, and we sort of have to hypothesize about what the district court might have done, right? I mean, what would you have proposed to the district court? What should the district—other than saying that the district court just failed by doing basically sending back saying you have enough evidence, go ahead and decide it. I mean, what do you think the district court should have said? The district court should have followed this court's clear law and said reasonably near means within a few weeks of the charge date, unless you find special circumstances. But that's not the law. I mean, the law is that can be reasonably near, within a few weeks, or it can be some other interval, depending on what the evidence is. And I was about to add that, yes. And it could say that there are some special—in special situations, it could be further than that. There's nothing in this court's law that suggests eight and a half months is—would ever satisfy the reason—the honor about the reasonably near. And in fact, we cited two cases in our brief, one from the Seventh Circuit, Musgraves, and one from the Ninth Circuit, which says that many months earlier isn't on or about a charge date. Had the defendant conceded that point by not objecting to admission of the December and the April and the May evidence? No, that evidence was—could have been used as evidence to show knowledge, to support the evidence of possession on the charge date. But there wasn't a 404B motion, right? No, there wasn't a 404B motion. It wasn't other acts. The government's theory was this helped prove knowledge of possession on the charge date. And in fact—well, so the government's argument here is that what the jury was asking about was what it could use that evidence for. But that evidence—the district court had told the jury, as district courts routinely tell juries, that evidence is admissible to be considered for any purpose unless you get a limiting instruction from me. There was no limiting instruction, so there could have been no confusion that the jury could consider that evidence for proof of possession on or about September 8th. Where it gets confusing is what the government argued in its summation, which is you have evidence of actual possession, direct physical control over the firearm from the photographs, as well as—but it says—but also dominion and control on the charge date. So the government—there was a suggestion in the summation that the jury could have rested its verdict on what happened in December of 2020. And that's where the jury's—that is one explanation for why the jury asked the question that it did. What did defense counsel say in closing about the Facebook picture? The defense said, well, you have to focus—there's evidence of other statements, because there were statements about weapons and an interest in ammunition. And the defense tried to say, but you have to focus on September 8th, not what happened before. But there was also argument from the government that you could look to actual possession, and that would only have been in December of 2020. There was also—I mean, apart from that, in all of the posts, the only post that talks about possessing a gun is from June 1st of 2021, when Mr. Ness posted he has a particular scope on his Creedmoor rifle. But even that is more than three months before the charge date, and that was never a focus of the argument. The focus was more on the actual picture of Mr. Ness firing the gun in December. Okay, that's the firearm. There's also ammunition that's charged. There is. And I think there's 12 varieties of caliber and make and manufacturing and so forth. There's a lot of variety and quantity. All of those were found on September 8th. Is that right? In his trailer.   And then so we know that those were possessed by him. The jury found that those were possessed by him on that day. We don't know that those were possessed by him. We know that Mr. Irwin said he left the ammunition there, but we don't know they were possessed, knowingly possessed, by Mr. Ness on that day. Looking at the verdict form. Yes. First of all, you have the indictment, which lists all of those separate kinds of ammunition, and it says that on or about September 8th, within the district, knowingly possessed and affecting commerce, ammunition to wit. And then we have the 12 categories. Verdict form, we, the jury, duly impaneled. Find following count one. Did defendant knowingly possess ammunition as charged in the indictment? And so it's not just ammunition he was talking about in his Facebook conversations or anything else. It's the ammunition as charged in the indictment, which is the very ammunition that was found during the search of his trailer. Taking the firearm out of it, why is that not sufficient to affirm? It's not sufficient because of what the jury's, what the court's instructions said. The court said that it was a crime for him to, for a felon to possess any ammunition. The instructions were repeatedly phrased in terms of a firearm or any ammunition. The jury was not given any instruction on what it needed to do if it found that he possessed some of the ammunition but not other ammunition. And again, the jury wouldn't have been looking to things other than September 8th, as its note shows it was, if it was relying just on what was in the trailer. It might have with the firearm and not the ammunition. Well, but once it found the firearm, the ammunition didn't have to find the firearm, although the special verdict form did call for a determination. It was required to say yes or no. But to me, the words that are really hanging me up, as far as your argument, are as charged in the indictment on the verdict form. That limits it to the very ammunition that was found that day. I don't see a possibility how the jury could say, we don't think he possessed any of the ammunition that was in his trailer because he didn't know about it. But we do think he possessed some ammunition eight months ago. That wouldn't match up with this language. That would be ammunition that was not charged in the indictment. Well, it wasn't told what it needed to do if the government had proved that 10 of the 12 types, I think there were 12 types, of ammunition were found in the trailer on that day. What was it to do then? It wasn't told if it found some of it, what was it to do? It still, it was told any ammunition was a crime. So its verdict is properly taken as proof that the government proved possession of ammunition. It doesn't have to be all that was in the indictment. It has to be some ammunition that was charged in the indictment. But the court's instruction certainly doesn't address the possibility of some versus any. And the instruction is possession of any ammunition by a felon is a crime. So let me ask you this. Just to be clear, we're sort of getting into evidence and things like that. You're not suggesting that there's insufficient evidence to convict him? No, not at all. Okay, so you would agree that if we view the evidence in the light most favorable to the jury verdict that this would be upheld on a sufficiency charge? Certainly. Okay. So we would ask the court to reverse for plain error and grant Mr. Ness a new trial. Thank you. Thank you. Good morning, Your Honors. May it please the court. Lisa Williams here for the United States of America. I think that the meat of this case comes down to how the court interprets the jury's question. And the defense lays out his interpretation of the question in his appeal brief. But the government offers an equally compelling other interpretation. And the court doesn't have to decide which one is right. It's the fact that there are multiple ways to interpret what the jury was asking that leads to the conclusion that the court didn't plainly err in how it responded. The court took a very measured approach with just referring them back to the evidence. And if it would have started to get in and guess about what their question meant, that's when I think the court would have waded into more dangerous territory. If the jury then was still confused with the court's answer, they could have followed up with another more specific answer. But the jury didn't do that in this case and instead returned the verdict. And so I think that there's just not, given how this plays out, there's just not enough to find an error, let alone a plain error on the court's part. And here's why the government would put forth its interpretation of the question. You know, you've got a jury sitting here and defense counsel stresses in closing that this case is only about possessing the firearm on September 8th. The defense counsel concedes in closing that the defendant previously possessed the firearm. He says, absolutely, he was on Facebook, he possessed the firearm, he was firing it. But that's not what this case is about. This case is only about September 8th. And so the jury goes back hearing that and then is probably confused about, OK, so if it's about September 8th, then why is all this evidence about his prior possession relevant? Why should we? And that's what they're saying. How far back can we go with this stuff to see if he possessed it on September 8th? I think all of us in this room as lawyers understand that prior possession of a firearm, of the same firearm, is intrinsic to the allegation of later possession and that it's very relevant and that it's helpful information. But a jury of non-attorneys, of lay people, I think it's reasonable to think that they may be a little confused about why they didn't tell us later. If we're going to hypothesize about what the jury was thinking, let's say they go back and all 12 of them, of course, agree that he possessed it in December of 2020. Would the government agree that as a matter of law, that would not be covered by the Honor About Language? So, I don't feel comfortable agreeing that as a matter of law, it's not. And the reason I don't, Your Honor, is because the case law is within a few weeks. It's fine, but some other interval that's reasonable given the contours of the case. And I just was reading this case in another context, and I cannot remember the name, but it's a 1999 case from this circuit. And it was about a sexual abuse of a child and the indictment charged October of 1995 as when the Sex Act took place. And what happened is the trial evidence showed that the defendant had prostate surgery in September of 1995. And he would be unable to have sex to ejaculation for four to six weeks after that. And then he was also in prison for a long period of time in the beginning of 1995. And the court said, you know, the problem with the case is that the child never testified to any sex act in 1995. If there was some proof somewhere in 1995 that the sex act had taken place, then maybe that would be within the interval. Well, sure. I mean, there's some ambiguity in what reasonably near means. We can concede that. But under the facts of this case, would you say? So not, you know, going into other cases that have unique facts where defendants had surgery and been in prison. But here, when there is evidence of actual possession in December of 2020, there's a charge of possession in September of 2021. Would the government agree that reasonably near is not covered by that gap in time? I think that it would be a stretch. I think it would be a different case for me to have to stand up here and argue that it was reasonably near. I think that I would agree it's a hard road for the government to make. Sure. And I will agree that both parties have different interpretations of the jury note. And there's certainly some ambiguity to it. But the district court's response is focused on a factual aspect of it. You have all the evidence. And you mentioned, well, the jury was free, if it still had questions, to ask more questions. But a fair reading of the response from the court would be essentially shut the door on more questions. You have all the evidence you need to render your verdict. In other words, get back in there. You have the evidence. And, you know, don't bother me anymore. So we're evaluating whether district court committed error under Supreme Court precedence to, you know, in concrete terms, clear up these questions. How do we interpret the district court's response related to the best reading, I think, of the jury question? Well, I think what's important is that the district court offered its interpretation of the question and then says, I could also reference them to the on or about, but I don't know whether I need to do that or not. And that shows that the district court did say, maybe they are talking about this, but I don't know if I need to. And then both attorneys said, no, no, you don't need to do that. And so at the time that this was happening in the trial, the court and the parties didn't think that that additional response was necessary because that's not really what they interpreted the question as getting to. I do think your point is well taken about the answer. You have all the evidence you need is could be chilling to the jury asking additional questions. But at the same time, it's just hard to know whether or not it did have that chilling effect. Juries are such peculiar beasts that it's hard to know how they interpret what we tell them or what the court tells them. I think in this case, the plain error hurdle is really insurmountable on the substantial likelihood and the fourth prong, the effect on the integrity of the judicial system. And it's funny because we often appear on, well not often, but we appear on plain error review and it's always been hard to conceptualize a case that a court finds plain error that affects a substantial right that doesn't then impact the fairness and integrity of the judicial proceeding. But I actually think this is the case because Mr. Ness is guilty. There's just simply no doubt about that. His defense at trial was not that he didn't know the firearms were in his house. He conceded that he did. His defense is that he thought that he wasn't allowed to own firearms, but that he could possess firearms. And so he was confused about his ability to possess firearms. That was his trial defense. And as a matter of law, we all know that the law of possession is not concerned with ownership. It's concerned with direct or indirect control over the item. And so Mr. Ness is absolutely guilty of possessing these firearms and ammunition on September 8th. He lives alone. He knew the firearms were there. He admitted in the conversation with the ATF agent that he knew that the firearms were there, that he was keeping them safe for a friend. No one else had direct control over these items in his house. And so to argue that this error, that there needs to be a retrial, that we need to go back, the only argument that Mr. Ness can use to escape being convicted of these charges is some sort of jury nullification. Like, hey, jury, I know that the law says what it is, but I was really confused, so please don't find me guilty. And that is not in the interest. That type of jury nullification argument doesn't uphold the interests of justice and what we're looking for. That being said, he also bears a very steep hill on proving an effect on his substantial rights. Again, for many of the same reasons, he's just plainly guilty of this offense. I thought that, and I may well be mistaken, I thought that Mr. Ness contested that he knew that those were in the trailer. His friend said he did, and he said he didn't. The agent said he admitted some things that he disputed that he told the agent. In other words, I don't know that it's that straight up and down. He argued, Your Honor, I'm sorry I'm having so many troubles with this microphone. I really apologize for that. He admitted in the conversation with the special agent with him that he knew that the firearms were in his house because he knew his friend had dropped them off and he was holding them for his friend. According to the agent. According to the agent. And then again, at trial, what I recall is that the government attorney kept trying to get him to admit that he possessed the firearms, and that's what he refused to admit to. He refused to admit that he possessed them. And he tried to say, but I do recall, I don't think he ever said I had no idea they were in my house. He wanted to draw that line that his knowledge of them being there was different than him possessing the firearms, and that's how the testimony came out. Is there a reason? Is the real problem underlying all of this that the government didn't charge a count for December as well? Well, Your Honor, I have to tell you, I don't think that that's the real problem. I think that there would be some charging difficulties with that account or with charging the December possession for some of the reasons that you flagged when counsel was up here. The Facebook video of the gun is good evidence. I don't want to pretend that it's not, but, you know, the government has to prove that it's a firearm, that it traveled in interstate commerce, and it's very difficult to satisfy that burden of proof with just a video of a firearm. You can't read the serial number off of it. And so that's a harder charge to have. They surely could have included it. We could have, but it's not best practice. Why not? Why would that not be best practice so we're not having this argument now? The jury would have said yes or no. This is a gun that you would have had testimony. This is the manufacturer, therefore, across the state line. We don't have the serial number. We think it's the same firearm. Here are the reasons why. And if the jury said not guilty on that count, fine. And, again, we could have. The linkage of proof to get there is much more tenuous than the linkage of proof for the September 8th count because that firearm was actually physically recovered and is able to be examined by ATF agents. And I'm not saying it's not there because I think there is strong evidence. I believe it's the 4473 form was pulled from the purchase in Wyoming and the serial numbers match. And so we know for sure that the firearm recovered on September 8th is Mr. Irwin's firearm and that he purchased it in Wyoming and Mr. Irwin is in the Facebook page. And so I don't want to act like there's no evidence that it's the same firearm. The government would submit that it is the same firearm. But and we could have charged and maybe we wouldn't have had to come to the circuit. So what fixes this next time? Is it just a replay next time this happens or is there something that some mistake that was made, even if it doesn't lead to a reversal? I do think a fair reading of the case law. The district court could have also referred the jury back to its instructions. You know, you have all the evidence you need and the instructions to guide you. I think, you know, we can Monday morning quarterback it all day long and come up with some things that the district court could have done. I think we could do that in every single case. There are things that we could have done better. But at the same time, this was not a clear question from the jury. And I think it's better that the trial court err on the side of caution and brevity when answering an unclear question, then really start to wade in and interpret. I guess the court could have asked the jury for more clarity on its question before answering it. Did you did you come up with any any research where the case included a back and forth between the judge and the jury where they ask? I mean, this is a very artful question that they asked. Part of it could be suggesting they wanted to know something about the law. Part of it could suggest they wanted to know something about the facts. Did you come across any case where when the judge got an unclear question, they sent it back and said, I don't really know what you mean. Send me a better question. Do something like that. I didn't find a case like that, Your Honor. I would have cited it if I had, because I think that that would maybe be a best practice. That if everyone's confused, again, the best practice is to ask for clarity before answering the question. Or our colleagues on the trial branch may suggest that engaging in extended note, note writing campaigns with the jury could result in more confusion. Well, and that's something that it's important to put in the context, right, is we're saying the jury is confused. But we actually don't know how many of the jurors had this question. Sometimes it's just a lone holdout and the other 11 to placate him, say, fine, send it in. And then when they get the question back, they're like, see, we told you you're not going to get any info. Can we vote now? And given that we got a verdict an hour after the question, there's some support there. I see that I am nearly out of time. Thank you. Thank you. Very briefly, the note itself is talking about how far back we go on the dates. The district court said maybe we should. I could instruct them on or about. The court clearly understood it as showing confusion on or about. It didn't adequately respond to that. And the court was right that Mr. Ness did dispute whether he knew, did say he didn't know that the guns had been put there. And that's on volume three at page 289 to 290. Yes, it's paginated in the bottom right hand corner. And this court said, thank you. Thank you, counsel, for your arguments. The case is submitted and you are excused.